Mitchell A. Stephens (11775)
Justin L. James (15167)
Jordan Pate (17634)
James Dodge Russell & Stephens, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Email: mstephens@jdrslaw.com
       jjames@jdrslaw.com
       jpate@jdrslaw.com

*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| YOUNG LIVING ESSENTIAL OILS, L.C., *Plaintiff*, v. MADISON VINING, TYLER VINING, VINING ESSENTIALS LLC, MONIQUE MCLEAN, JEREMIAH MCLEAN, MCLEAN ESSENTIALS LLC, and CHELSEA HUMPHREYS, *Defendants*. | **EXPERT DECLARATION OF PATRICK KILBOURNE** Case No: 2:21-cv-00510-NJP Judge Jill N. Parrish |

I, Patrick Kilbourne, declare as follows:

1. I understand that on August 18, 2021, Young Living Essential Oils, L.C. ("Plaintiff") filed a Complaint against Madison and Tyler Vining, Vining Essentials LLC, Jeremiah and Monique McLean, McLean Essentials LLC, and Chelsea Humphreys (collectively "Defendants") for breach of contract.

2. I understand Plaintiff now seeks an order "requiring Defendants to terminate their relationship with Modere," among other things.

3. I have been retained as an expert by James Dodge Russell & Stephens, P.C. to offer opinions on accounting, damages, and alter ego issues in this proceeding.

4. My work on this matter is preliminary and ongoing. I understand that no discovery has occurred and that information generated in discovery will be made available to me in the future.

5. I am a Managing Director at Berkeley Research Group, LLC ("BRG"). BRG is a leading global expert services and consulting firm with over 1,200 experts and professionals. BRG experts and consultants specialize in the provision of sophisticated economic, financial, and analytical advice across a wide range of disciplines, including accounting, antitrust and competition policy, complex damages, intellectual property, finance, health care, valuation, and workforce issues. BRG advises clients in major industry sectors with compliance, business process improvement, and strategy consulting. We provide independent expert testimony, litigation and regulatory support, authoritative studies, strategic advice, and document and data analytics to major law firms, Fortune 500 corporations, government agencies, and regulatory bodies around the world.

6. I have 27 years of experience in public accounting and consulting and am a Certified Public Accountant (CPA), a Certified Management Accountant (CMA), a Certified Fraud Examiner (CFE), and a Chartered Global Management Accountant (CGMA). I am also Certified in Financial Forensics (CFF) and Accredited in Business Valuation (ABV) by the American Institute of Certified Public Accountants (AICPA).

7. I earned a Master of Business Administration (MBA) degree from the University of Pennsylvania's Wharton School of Business and Master of Accounting and Bachelor of Science degrees from Brigham Young University.

8. I have been retained as an expert and have testified in a variety of settings, including United States federal courts, United States state courts, international arbitrations, and domestic arbitrations. I have provided testimony on various matters, including lost profits, disgorged profits, reasonable royalties, economic damages, accounting, finance, internal cost accounting, valuation, and accounting investigations.

9. My curriculum vitae is attached to this declaration.

10. My analysis is based upon my experience, judgment, and my expertise in accounting, economics, finance, and the evaluation of damages. My rate for this engagement is $590 per hour. My firm's fees are not contingent upon the outcome of this litigation.

11. On previous occasions, I have been asked to evaluate the indicia of alter ego related to accounting and business operational issues. Specific to this declaration, I have been asked to evaluate the accounting and business operations of McLean Essentials LLC and Jeremiah and Monique McLean; and Vining Essentials LLC and Madison and Tyler Vining and to offer preliminary opinions as to whether, from an accounting and corporate structure standpoint, the indicia of alter ego indicates a lack of separateness of interests and operations between McLean Essentials LLC and Jeremiah and Monique McLean; and a lack of separateness of interests and operations between Vining Essential LLC and Madison and Tyler Vining.

12. I understand that the alter ego criteria established by the courts in the states of Oklahoma and Alabama are relevant to this matter.

13. I understand that Oklahoma courts evaluate the existence of an alter ego entity based on the following factors: "(1) the LLC is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the LLC or vice versa or (4) the LLC is merely a sham."[1]

14. I understand that Alabama courts evaluate the existence of an alter ego entity based on the following factors: ". . . where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation."[2]

### I. Evaluation of McLean Essentials LLC

15. I spoke with Eric Hudson, who works for McLean Essentials LLC. Mr. Hudson characterizes his role as similar to that of a CFO. However, this is not his official title.

16. I reviewed the following documents of McLean Essentials LLC:

- Tax returns for 2015 through 2020;
- Balance sheets for 2016 through 2020;
- Income statements for 2016 through 2020;
- General ledger for 2017 through 2019;
- W-2 wage and tax statements for all employees from 2015 through 2020;
- Certificate of Formation with the State of Alabama;
- Corporate operating agreement;
- Tax return engagement letter with Associated Business Services for 2020;
- Evidence of Workers Compensation insurance payments in 2018 and 2019;

---

[1] *Mattingly Law Firm v. Henson*, 2020 OK Civ. App 19, 466 P.3d 590.
[2] *S. Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1258 (M.D. Ala. 2004).

- Bank statements for McLean Essentials LLC for May, June, July, and August 2021.

**A. McLean Essentials Capitalization**

17. McLean Essentials is sufficiently capitalized to operate independently of its owners.

18. I reviewed the financial statements and the tax returns of McLean Essentials for the years 2015 through 2020. For the period of 2015 through 2020, McLean Essentials year-end balance sheets showed that it maintained an average 1) cash balance of nearly $400,000, 2) total assets of approximately $600,000, 3) no long-term debt, and 4) retained earnings of approximately $450,000.

19. For the period of 2015 through 2020, McLean Essentials year-end income statements showed average annual 1) revenue of $3.1 million, 2) operating expenses of $1.7 million, 3) and net income of $1.4 million.

**B. McLean Essentials Observation of Corporate Formalities and the Presence of Corporate Records**

20. McLean Essentials was formed with the State of Alabama as a limited liability company in December 2013.

21. I reviewed the company's operating agreement, which outlines the operations of a typical company.

22. McLean Essentials files annual tax returns, prepares company financial statements, uses accounting software to record and monitor its financial operations, pays payroll taxes for its employees, and engages in other corporate formalities typical for a business of its nature.

**C. McLean Essentials Payment of Salaries and Year-end Distributions to Owners**

23. McLean Essentials pays a salary to its owners, Jeremiah and Monique McLean. The Company also withholds federal and state taxes and pays the corporate share of Social Security and Medicare taxes. For the period of 2015 to 2020, the average salary paid to Jeremiah and Monique

McLean by McLean Essentials was approximately $200,000. Based on my experience, such a salary is reasonable and customary for a company such as McLean Essentials.

24. McLean Essentials also makes distributions to its owners. During the period of 2016 through 2020, McLean Essentials distributed approximately 85% of the net profits to its owners.

### D. McLean Essentials Segregation of Business and Personal Funds

25. Based on my review of the financial, accounting, and corporate documents, McLean Essentials and its owners, Jeremiah and Monique McLean, appear to segregate business and personal funds. Mr. Hudson, the manager of McLean Essentials, informed me that his company operating policy is "no personal in the business and no business in the personal." Consistent with this policy, I did not observe personal expenditures of Jeremiah or Monique McLean in the detailed general ledger of McLean Essentials. In addition, McLean Essentials paid a salary and distributions to Jeremiah and Monique McLean and paid payroll taxes on those salaries.

### E. McLean Essentials Separate Books and Records and Separate Bank Accounts

26. McLean Essentials has books and records and bank accounts specific to the company. While I did not review the records and bank accounts of Jeremiah and Monique McLean, I observed that the McLean Essential financial records and bank statements were specific to McLean Essentials and did not include personal payments for Jeremiah and Monique McLean.

### F. McLean Essentials Presence of Employees

27. In 2015, the only two employees of McLean Essentials were Jeremiah and Monique McLean. In 2020, McLean Essentials had a total of 17 employees. McLean Essentials filed W-2 tax forms for each of the 17 employees, withheld taxes, and paid the corporate share of Social Security and Medicare taxes.

28. McLean Essentials also paid workers compensation insurance.

### G. Summary of my Evaluation of the Alter Ego Indicia for McLean Essentials and Jeremiah and Monique McLean

29. In summary, based on my preliminary review of the McLean Essentials accounting, financial, and operational documents, from an accounting and corporate structure standpoint, the alter ego factors I reviewed indicate that McLean Essentials LLC is not the alter ego of Jeremiah and Monique McLean.

## II. Evaluation of Vining Essentials LLC

30. I spoke with Brandy Hales, Vining Essentials' outside accountant. Ms. Hales works at Summit Accounting Services.

31. I reviewed the following documents of Vining Essentials LLC:

   a. Vining Essentials tax return for 2019;
   b. Tyler and Madison Vining tax return for 2019;
   c. W-2 wage and tax statements for Madison and Tyler Vining from 2019 and 2020;
   d. Vining Essentials tax return engagement letter with Summit Accounting Services for 2020;
   e. Tyler and Madison Vining tax return engagement letter with Summit Accounting Services for 2019;
   f. Bank statements for Madison and Tyler Vining for June, July, and August 2021;
   g. Bank statements for Vining Essentials LLC for May, June, July, and August 2021.

### A. Vining Essentials Capitalization

32. Vining Essentials is sufficiently capitalized to operate independently of its owners.

33. I reviewed the tax return of Vining Essentials for 2019, which includes financial statement information for the years ending 2018 and 2019. Vining Essentials year-end balance sheets showed that during 2019 1) its cash balance was between $400,000 and $60,000, 2) it had no long-term debt, and 3) it had retained earnings of between $440,000 and $29,000.

34. In 2019, Vining Essentials tax returns showed 1) revenue of $2.3 million, 2) operating expenses of $768,000, and 3) net income of $1.5 million.

**B.    Vining Essentials Payment of Salaries and Year-end Distributions to Owners**

35. Vining Essentials pays a salary to its owners, Madison and Tyler Vining. The Company also withholds federal and state taxes and pays the corporate share of Social Security and Medicare taxes. For the periods of 2019 to 2020, the salary paid to Madison and Tyler Vining by Vining Essentials was $200,000 and $16,000, respectively. Based on my experience, such a salary is reasonable and customary for a company such as Vining Essentials.

36. Vining Essentials also makes distributions to its owners. In 2019, Vining Essentials distributed approximately all of its 2019 profits and a portion of prior year profits to its owners.

**C.    Vining Essentials Segregation of Business and Personal Funds**

37. Based on my review of the financial, accounting, and corporate documents, Vining Essentials and its owners, Madison and Tyler Vining, appear to segregate business and personal funds. Ms. Hales informed me that any transfers of funds from Vining Essentials to Tyler or Madison Vining are accounted for and treated as distributions to the owners. In addition, Vining Essentials paid a salary to Madison and Tyler Vining and paid payroll taxes on those salaries.

**D.    Vining Essentials Separate Books and Records and Separate Bank Accounts**

38. Vining Essentials and Madison and Tyler Vining have separate bank accounts.

**E.    Summary of my Evaluation of the Alter Ego Indicia for Vining Essentials and Madison and Tyler Vining**

39. In summary, based on my preliminary review of the Vining Essentials accounting and financial documents, from an accounting and corporate structure standpoint, the alter ego factors I reviewed indicate that Vining Essentials LLC is not the alter ego of Madison and Tyler Vining.

I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.

EXECUTED this 22 day of September 2021, in Salt Lake City, Utah.

By:

_____
Patrick Kilbourne